# Lee Litigation Group, PLLC

30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

Writer's Direct:  (212) 465-1188
cklee@leelitigation.com

January 30, 2018

**VIA ECF**
The Honorable Richard M. Berman, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *Fisher v. SD Protection Inc., et al.*
Case No. 17-cv-2229

Dear Judge Berman:

We are counsel to Plaintiff and write, pursuant to your Honor's Order dated January 15, 2018, to respectfully request that the Court approve the parties' settlement agreement and dismiss the matter.  Defendants join in this application.  Moreover, Plaintiff respectfully requests that the Court approve Plaintiff's counsel's legal fees of $23,000 of the total settlement amount for the reasons stated herein.  Attached hereto as **Exhibit A** please find the parties' Settlement Agreement and Release (the "Settlement Agreement").

The court in *Wolinsky* sets forth the following criteria for determining whether a proposed settlement is fair and reasonable:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors:  (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted).

During a settlement conference with Your Honor regarding this matter, the parties reached a settlement of $25,000, which provides well over 100% recovery of Plaintiff's back wages and

1

liquidated damages plus recovery of Plaintiff's counsel's legal fees. Based on the above criteria, the agreement is fair and reasonable and should be approved by the Court.

**Plaintiff's Range of Possible Recovery**

Plaintiff Michael Fisher worked for Defendants' "SD Protection" professional chaperone service from February 2015 until July 2015. During his employment, he worked approximately 49 hours per week and was paid an hourly rate of $10. Attached hereto as **Exhibit B** are Plaintiff's best-case scenario damage calculations, which amount to a total of $1,170.00 ($585 in backwages, plus $585 in liquidated damages).

The settlement reached by the parties provides for full, 100% recovery of alleged back wages for the Plaintiff, plus liquidated damages. In fact, Plaintiff is to receive $2,000.00, which is nearly double what he is owed in back wages and liquidated damages. Since the attached damage calculations are a best-case scenario, and Plaintiff will be receiving nearly four times his back wages alone, Plaintiff could not possibly recover a greater amount if he were to go forward to trial in this case. In fact, Plaintiff would run the risk of recovering even less if he were to continue to litigate the matter. If Defendants prevailed in demonstrating that Plaintiff was compensated for his overtime hours, or that Plaintiff worked less hours, Plaintiff's calculations would be significantly reduced and Plaintiff would receive a smaller amount than he is receiving now through the settlement, which is already far greater than what he is actually owed.

**The Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses and The Parties Face Serious Litigation Risks**

There is no logical reason for Plaintiff to continue with this litigation, as it is very unlikely that Plaintiff could possibly recover a greater amount than he is receiving through the settlement. The burdens and expenses of trial are entirely unnecessary and would only increase the Plaintiff's legal fees, without increasing the amount due to Plaintiff. In fact, continuing the litigation and proceeding to trial would be highly risky to Plaintiff as he would likely receive a smaller amount than what is allocated to him in the settlement. The risks are unnecessary, as Plaintiff is already receiving nearly double his back wages and liquidated damages. Plaintiff believes the amount of $2,000.00 is a fair result, as he is receiving far more than what he is owed in back wages, while eliminating the risks of trial.

**The Settlement is a Result of Arm's-Length Negotiation and There is no Possibility of Fraud of Collusion**

The proposed settlement is fair and reasonable because Plaintiff and Defendants were represented by competent and experienced counsel during the litigation and settlement process. There was an exchange of relevant documents and an open sharing of facts and information. The parties negotiated vigorously and were able to reach an agreement during a settlement conference with the Court, in which Plaintiff would receive over 100% recovery of back wages and liquidated damages, eliminating the burdens and costs of trial.

**The Attorneys' Fees are Fair and Reasonable**

<u>Work done by Counsel</u>

The settlement provides for full recovery of back wages and liquidated damages for the Plaintiff and significant recovery of Plaintiff's counsel's lodestar. Pursuant to the settlement reached by the parties, Plaintiff's counsel is to receive $23,000.00. Attached hereto as **Exhibit C** are Plaintiff's counsels' detailed time records and list of costs, the total of which is greater than the amount being paid to Plaintiff's counsel under the Settlement Agreement. Plaintiff's costs alone exceed $5,000.

Plaintiff's counsel invested significant time and resources into litigating this matter vigorously and are entitled to their lodestar. Plaintiff had agreed, upon retaining Plaintiff's counsel, that Plaintiff's counsel may receive a percentage of the full settlement amount negotiated or their lodestar. Given that Plaintiff is receiving 100% recovery of back wages, along with liquidated damages, Plaintiff's counsel is entitled to receive their lodestar. It is only due to Plaintiff's counsel's vigorous negotiating and litigating, that Plaintiff was able to obtain such a complete recovery. In settling this matter for $25,000, Plaintiff's counsel agreed to receive a reduced amount, amounting to only half of their lodestar, in order to resolve the matter.

Plaintiff's counsel's fees of $23,000.00 are fair and reasonable given that their lodestar exceeds such amount and given that Plaintiff is receiving 100% recovery of back wages, including liquidated damages, apart from the legal fees. Such work done by Plaintiff's counsel includes interviewing the Plaintiff, investigating the identity of Defendants, preparing a Complaint, preparing damages calculations, Rule 26 call, preparing a submission for the initial conference, preparing for and attending the initial conference, preparing discovery requests, preparing a letter motion for pre-motion conference on class certification, engaging in discovery and resolving discovery disputes, preparing for and participating in multiple status teleconferences with the court, preparing for and conducting depositions of Defendants along with travel to and from Florida to conduct said depositions, negotiating with Defendants' counsel, preparing damage calculations, correspondence with Defendants' counsel, correspondence with the Court, attending the settlement conference, preparing and revising the settlement agreement and preparing this submission.

<u>Counsel's Rates</u>

Plaintiff's counsels' rates are fair and reasonable and have been routinely approved. "The reasonable hourly rate is what a paying client would be willing to pay." *Imbeault v. Rick's Cabaret Intern. Inc., RCI Entertainment (New York) Inc., Peregrine Enterprises, Inc.*, No. 08 Civ. 5458(GEL), (2009 WL 2482134), citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Further, "This is determined by reference to rates, 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Imbeault v. Rick's Cabaret Intern. Inc., RCI Entertainment (New York) Inc., Peregrine Enterprises, Inc.*, No. 08 Civ. 5458(GEL), (2009 WL 2482134), citing *Blum v. Stevenson*, 465 U.S. 886, 895 n. 11 (1984).

Plaintiff's Counsel, C.K. Lee, has fifteen years of experience practicing law and has recognized expertise in employment law. Mr. Lee has litigated hundreds of labor law cases, and has argued before the Court of Appeals on FLSA matters. Mr. Lee's hourly rate of $550 has previously been approved in the Second Circuit in similar matters, and his rate is consistent with the prevailing market rates today for a private attorney within the Eastern and Southern Districts of New York with specialized knowledge in employment law. Plaintiffs' Counsel, Anne Seelig, has more than ten years of experience practicing law and has recognized expertise in employment law.  Ms. Seelig's hourly rate of $450 has previously been approved in the Second Circuit in similar matters (See *Acevedo v. La Mesita Restaurant Inc, et al., No. 16-CV-6319* (EDNY, approved on February 24, 2017); *Corea v. Lazar Edibles, Inc., et al., No. 16-CV-3834* (SDNY, approved on January 4, 2017)) and her rate is consistent with the prevailing market rates today for a private attorney within the Eastern and Southern Districts of New York with similar experience and specialized knowledge in employment law. Second year associate, Geoffrey Luan, no longer employed at Lee Litigation Group, PLLC, billed at a rate of $200 per hour. First year associate, Krystyna Blokhina, no longer employed at Lee Litigation Group, PLLC, billed at a rate of $175 per hour. Paralegal, Luis Arnaud, bills at a rate of $125 per hour, which rate has been approved in this District.

Plaintiff's counsels' fees have routinely and recently been approved in individual settlements where our lodestar, timesheets and the above rates were submitted to the Court. *See Amador v. El Paso Taqueria 1643 Corp., et al.,* No. 15-CV-8878 (SDNY, approved on February 28, 2017); *Acevedo v. La Mesita Restaurant Inc, et al.,* No. 16-CV-6319 (EDNY, approved on February 24, 2017); *Maldonado v. El Aguila Lex, LLC, et al.,* No. 15-CV-9306 (SDNY, approved on February 3, 2017); *Corea v. Lazar Edibles, Inc., et al.,* No. 16-CV-3834 (SDNY, approved on January 4, 2017); *Rojas, et al. v. East-Lex Diner, Ltd., et al.,* No. 15-CV-6195 (SDNY, approved on October 14, 2016).

The hourly rates requested herein have also been approved in numerous class action settlements, which were based on a percentage of the fund calculation, with a lodestar cross check. See *Galvez v. Lucky Pearl LLC, et al., 15 Civ 5177* (S.D.N.Y. 2016); *Solorio v. 142 Mercer Street, LLC, et al.*, 15 Civ. 5817 (S.D.N.Y. 2016); *Mohamed v. Sophie's Cuban Cuisine, Inc., et al.*, No. 14 Civ. 3099 (S.D.N.Y. 2016); *Hernandez v. McGee's Bar & Grill Inc., et al.,* No. 15 Civ. 6067 (S.D.N.Y. 2016); *Corte v. Fig & Olive Founders LLC, et al.*, No. 14 Civ. 7186 (S.D.N.Y. 2015) *Carillo v. 27-39 East 30 Rest. Corp., et al.*, No. 13 Civ. 4491 (S.D.N.Y. 2015); *Sanchez v. JMP Ventures, L.L.C., et al.,* No. 13 Civ. 7264 (GWG) (S.D.N.Y. 2015); *Romero v. La Revise Associates, L.L.C.*, No. 12 Civ. 8324 (GWG) (S.D.N.Y. 2014); *Lin, et al. v. Benihana National Corp., et al.*, No. 10 Civ. 1335 (S.D.N.Y 2014.); *Viafara v. MCIZ Corp., et al.*, No 12 Civ. 7452 (S.D.N.Y. 2014); *Sierra v. Triple J. Associates of Queens, Inc.*, No 12 Civ. 4462 (E.D.N.Y. 2013); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., et al.*, No. 12 Civ. 0265 (S.D.N.Y. 2013); *Flores, et al. v. KC 53 LLC, et al.*, No. 12 Civ. 8095 (S.D.N.Y. 2013); *Sanjaya, et al. v. Inakaya USA Inc., et al.*, 12 Civ. 4500 (S.D.N.Y. 2013); *Han v. AB Gansevoort*, No. 11 Civ. 2423 (S.D.N.Y. 2012); *Marte v. Energy Resources*, No. 11 Civ. 2490 (S.D.N.Y. 2012); *Han v. Sterling National Mortgage*, No. 09 Civ. 5589 (E.D.N.Y. 2012); *Amaya v. 166 Park*, No. 11 Civ. 1081 (E.D.N.Y. 2012).  In each such action, C.K. Lee  was approved for a rate of $550 per hour, however again noting that such approved fees were based on a percentage of the fund method with a lodestar cross check.  *But see*, *Gonzalez v. Scalinatella, Inc*., No. 13 Civ. 3629, among others, in which the hourly rates of LLG counsel and paralegals were reduced.

Additionally, the Honorable Alvin K. Hellerstein, U.S.D.J. specifically stated that the undersigned law firm's rates were reasonable (including $550 per hour for C.K. Lee), in view of counsel's experience and quality of work. See attached as **Exhibit D** the transcript from *Metodio v. Down & Dirty Tacos Meatpacking LLC, et al.,* Case No. 15 Civ. 8754 of the final approval hearing on July 14, 2017 (16:17-17:8). More recently, C.K. Lee was approved for a rate of $650 per hour in *Orellana v. Pio Pio NYC, Inc.,* et al., Index No. 155941/16 (New York Supreme Court), also based on a percentage of the fund method with a lodestar cross check. Although counsel has been approved for this higher rate, Plaintiff's counsel is seeking here the rates that have been routinely approved in the Southern District.

<u>For Wage Cases, Courts Frequently Award Fees in Excess of Amount Received by Plaintiffs</u>

Plaintiff's counsel is entitled to the amount requested given that Plaintiff is receiving over 100% of backwages and liquidated damages that could possibly be owed had the case been adjudicated at trial in Plaintiff's favor.  During the settlement conference, Your Honor expressed concern regarding Plaintiff's counsel receiving an amount greater than Plaintiff from the settlement amount.  However, there is **no proportionality requirement** with regards to attorneys' fees, and Courts have frequently awarded legal fees based on counsel's lodestar at trial, even though the monetary recovery for plaintiffs was low, and where the lodestar dwarfed the amount that the jury awarded to the claimant. *See Wong v. Hunda Glass Corp*., No. 09-cv-4402 (S.D.N.Y. June 23, 2010) (awarding the undersigned $100,100.00 as attorneys' fees when judgment awarded to plaintiff was only $36,953.52); *See also Chen v. Jin Holdings, et al,* No. 10-cv-0414 (SDNY January 31, 2012) (Dkt no. 21) (awarding the undersigned $68,131.14, as attorneys' fees, when the judgment awarded to plaintiff was only $4,665.98, reasoning that "[s]ection 216(b) of the FLSA is designed in part to secure legal representation for those who have been injured, but for whom the monetary damages are too small to encourage a private attorney to take the case. In this particular case...plaintiff might well be without a remedy, if no 'reasonable fees' were permitted by statute.") *Id*. at 4.

Such reasoning directly applies to the instant matter where we negotiated a settlement for the full amount that Plaintiff could possibly recover at trial, and where Plaintiff's damages were a low amount compared to the lodestar that was necessary to achieve such recovery for Plaintiff. Moreover, in the same decision, the Honorable Paul A. Crotty, U.S.D.J. stated that "the Supreme Court has repeatedly recognized success in litigation as a critical factor in the reasonable fee which may be awarded. <u>Hensley v. Eckerhart,</u> 461 U.S. 424 (1983)." *Id.* at 4. While in that case, the plaintiff had only recovered a percentage of the original alleged damages, in this matter, Plaintiff is obtaining the best possible outcome on his backwages.

<u>Public Policy</u>

i. Courts Cannot Encourage Reducing Wage Claims Filings by Penalizing Plaintiffs' Attorneys

Until approximately 2010, there was no judicial approval required whatsoever for employment cases; around 2012 or so, there began a period where certain judges required approval,

while others did not.  More recently, after *Cheeks*, all FLSA settlements require judicial approval.  I surmise that the downward pressure on plaintiff-side legal fees is caused by the growth of FLSA lawsuits, and courts wanting to limit the additional filing of FLSA lawsuits to clog up their docket. The main problem with this trend is that for cases with individual non-class settlements, the margins on those cases are frequently even less than the lodestar.  With such cases, many judges will only agree to legal fees of 1/3 or less and, if the lodestar exceeds the percentage, courts expect the plaintiff's lawyer to eat the cost, rationalizing that such firm did not efficiently prosecute the case, and that they should learn to pick their cases better.  From my own observations, frequently the approval process takes more time and effort than actually negotiating the settlement, thus decreasing margins from individual settlements by 50%.

### ii. Fee Reductions Undercuts the Ability of Plaintiffs' Firms to Undertake Risky Novel Cases

The above rationale is a disservice to the bar because it severely impacts the way a law firm will undertake cases.  In many instances now, my firm has turned away cases because we feel that the difficult case would not be profitable because of the estimate on potential lodestar relative to recovery.  See, most recently, *Zhu v. Hunan House Manor Inc.*, 17-cv-6333 (GBD) (SDNY ECF Dkt. No. 40) where the undersigned withdrew as counsel "because Defendants have expressed an intent to litigate extensively even though the liability in this lawsuit is low, [and we] do not believe it is cost efficient for my firm to engage further in this matter" and "because [we] expect that (in order to properly litigate this lawsuit) [our] lodestar will far exceed the 1/3 percentage recovery on this matter."  A client may have a case where not a large amount of money is owed or due (as is the case with *Zhu*), but the liability is egregious and obvious; however, if counsel is only able to receive the low rate lodestar, or strictly it would not be profitable to undertake such case.  In other cases, where the liability is risky, it would also not be profitable to undertake the lawsuit because of the low lodestar.  This is directly adverse to the legislation of the FLSA where the legislature wanted all claims, large or small, to be prosecuted and to have any accrued cost be borne by defendants. Defense firms know the minimal risk of fee shifting now, and have undertaken to engage in protracted litigation, and then seek to settle for the individual liability of the named plaintiff, knowing that such liability is low, and forcing plaintiff's firms to eat their time.  This trend severely impacts the ability of plaintiffs to seek optimal private counsel, rather than resorting to Legal Aid, or other public options.

### iii. The Court Needs to Promote Corporate Attorneys to Do Good Works

Rather than cutting fees to dissuade other attorneys to enter into private practice to represent indigent clients, Courts should promote corporate attorneys to leave their golden handcuffs by properly compensating them for the risks to their careers that they undertake, and to reward them for doing good works.  Courts need to not just pay enough for attorneys to cover their overhead, but to compensate them for their opportunity cost if they stayed at a bulge bracket firm and were representing corporate clients at a billable rate exceeding $1000 per hour.  For example, the current average profit per partner in a bulge-bracket firm such as Kirkland & Ellis is $4.1 Million.  See Katelyn Polantz, *Obama White House Counsel Neil Eggelston Returns to Kirkland*, The National Law Journal (April 24, 2017).

Courts are not recognizing the immensely deep pockets against which plaintiffs firms have to compete. How do plaintiffs have a chance to be competitive if the approved rates and lodestar for the same quality work is only a mere fraction of those charged by corporate defendants' attorneys[1], who get paid monthly and are not fronting litigation costs? There naturally will be a brain drain to the management side (where there is little business risk and ingenuity required, or worrisome issues regarding administration, payroll or other issues that are taken care of by internal departments, so that attorneys only have to focus on legal work). The result is a market place where only second tier quality lawyers (who weren't able to receive lucrative job offers from large firms) will be available to plaintiffs. By properly paying plaintiff's attorneys, the courts level the playing field so that not only corporations can enjoy the very best that the legal profession has to offer.

By rewarding good work by individuals willing to risk their livelihoods and careers to develop a practice outside of a big firm, courts allow the free market to unshackle exceptional lawyers to do exceptional good in the world. With our firm's class action settlements, we have donated hundreds of thousands of dollars in unclaimed funds to various charities that have benefitted the hungry, the handicapped and the disabled, among others. See www.leelitigation.com. Specifically, with respect to a school for the developmentally disabled, we were able to completely renovate their play gym, which previously was an empty room with a few balls thrown in where the children could otherwise only walk in circles.

### iv. By Cutting Plaintiffs' Counsel Fees, Plaintiffs Cannot Compete On Equal Footing with Defendants

Most importantly, defendants do not take the risk of fee shifting seriously any more because they know from the public records that certain plaintiff's lawyers will only receive 1/3 on small non-class settlements (rather than their lodestar), which makes their business unsustainable. Rather than reducing litigation, fee cutting actually increases the amount of litigation by Defendants. If my law firm can only receive 1/3 on cases where we have invested far more time and money, the business model will be unsustainable. Plaintiffs firms, in essence, are putting up an interest free loan during the course of litigation, and only receive their compensation at the end of the lawsuit, if they win, and if they can collect. If through the benefit of its body of work and reputation, my firm is able to generate a substantial settlement for the client based on what he or she is owed, what harm is done in proving for attorneys' fees in excess of 1/3, other than recognition that Plaintiff was seeking, and received, exactly what it bargained for – a firm whose strong reputation forced defendants to the negotiating table for a quick and substantial settlement. Here, Plaintiff received more than 100% of his actual damages.

*                    *                    *

In view of the foregoing, and as agreed to by our client (both in his retainer and thereafter), we believe our request of $23,000, which provides a <u>negative</u> <u>multiplier</u> on our lodestar of more than $50,000 (the actual fees are less than $18,000 because $5,100 is in actual out-of-pocket expenses incurred during litigation) should be approved. Moreover, this payment is still subject to an installment plan.

---

[1] Based on my approved hourly rate of $250 in *Kim v. 511 E. 5th St. LLC* and a common $1,000/hour billable rate for large firm partners.

As such, the parties respectfully request that the Court approve the settlement.  We thank Your Honor for considering this matter.

Respectfully submitted,

  */s/ C.K. Lee*
C.K. Lee, Esq.

Encl.

cc: Valerie K. Ferrier, Esq.