Case 1:17-cv-02229-RMB-KNF   Document 97   Filed 02/04/20   Page 1 of 29
Case 18-2504, Document 66, 02/04/2020, 2768846, Page1 of 29

N.Y.S.D. Case #
17-cv-2229(RMB)

18-2504-cv
*Fisher v. SD Protection Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 04 2020

August Term 2019

(Argued:  November 19, 2019          Decided:  February 4, 2020)

Docket No. 18-2504-cv

MICHAEL FISHER,

*Plaintiff-Appellant,*

*v.*

SD PROTECTION INC. and SANDRA DOMINGUEZ MERCADO,

*Defendants.*[*]

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

WALKER, CHIN, and SULLIVAN, *Circuit Judges.*

---

[*]      The Clerk of the Court is respectfully directed to amend the official caption to
conform to the above.

CERTIFIED COPY ISSUED ON 02/04/2020

Appeal from an order of the United States District Court for the

Southern District of New York (Berman, *J.*) approving a settlement agreement in

a Fair Labor Standards Act case but modifying the agreement by increasing the

portion of the settlement funds to be paid to plaintiff while reducing attorneys'

fees and costs to be paid to his counsel.  On appeal, plaintiff contends that the

district court abused its discretion in modifying the settlement agreement.

VACATED and REMANDED.

---

C.K. LEE, Lee Litigation Group, PLLC, New York, New
York, *for Plaintiff-Appellant.*

No appearance *for Defendants.*[1]

---

CHIN, *Circuit Judge*:

In this Fair Labor Standards Act case, *see* 29 U.S.C. §§ 201 *et seq.* (the

"FLSA"), plaintiff-appellant Michael Fisher and his former employer settled the

action for $25,000, inclusive of attorneys' fees and costs.  The parties sought

---

[1]     This Court received a letter from the Law Offices of Nolan Klein, P.A., advising
that defendants did not retain counsel in this appeal.  App. Ct. Docket No. 38.
Defendants have not responded to the Notice sent by this Court prohibiting a
corporation from proceeding *pro se*.  *See* App. Ct. Docket Nos. 43-44.  Defendants appear
to take no position in this action as the appeal involves the split of the settlement funds
between plaintiff and his counsel.  We note also that the notice of appeal and brief were
filed on behalf of plaintiff and not his counsel.

approval of the settlement agreement from the district court, and the agreement provided for $23,000 of the settlement amount to be paid to counsel for fees and costs and $2,000 to be paid to Fisher.

The district court approved the overall amount of the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), but significantly modified the distribution of the settlement funds as between Fisher and his counsel.  In modifying the settlement, the district court calculated Fisher's damages for unpaid overtime as $585.  With statutory damages under the FLSA and the New York Labor Law (the "NYLL"), Fisher's maximum possible recovery -- were he to prevail in every respect -- was $11,170. Nonetheless, the district court awarded Fisher $15,055, which constituted 60.22% of the settlement amount, while awarding his counsel $8,250 in fees, or 33% of the total settlement amount, and $1,695 in costs.

We hold that the district court abused its discretion in rewriting the settlement agreement by modifying the allotment of the settlement funds.  When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise

it.  The district court further erred in concluding that the "maximum fee percentage" that plaintiff's counsel may retain in an FLSA suit is generally limited to 33% of the total settlement amount.  *See* App'x at 78.  Accordingly, and for the reasons set forth below, we vacate the district court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I.     *The Facts*

In February 2015, Fisher was hired by defendants SD Protection Inc. ("SD") and Sandra Dominguez Mercado to work as a professional chaperone.[2] His duties included working in hotel hallways to supervise student tour groups during late nights and early mornings, enforcing curfews, and monitoring noise levels.  During his 26 weeks of employment from February to July 2015, Fisher regularly worked 49 hours per week and was paid $10 per hour on a weekly basis.  Defendants failed to furnish Fisher any paystubs and he was not compensated for any overtime as required by the FLSA and NYLL.  Moreover,

---

[2]     For purposes of this appeal, the facts alleged in Fisher's complaint are assumed to be true.

defendants failed to provide Fisher proper wage notices or wage statements as required under the NYLL.

## II.   *Proceedings Below*

On March 28, 2017, Fisher sued SD and Dominguez Mercado for violations of the FLSA and the NYLL, alleging that he and others similarly situated were entitled to recover from defendants: (1) unpaid overtime, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs. Fisher was and still is represented by Lee Litigation Group, PLLC ("LLG").

On May 11, 2017, Fisher filed a pre-motion letter with the district court seeking a conference to discuss an anticipated motion for conditional collective certification.  The parties participated in an initial pretrial conference before the district court on May 15, 2017, and defendants filed an answer on June 2, 2017.  Fisher never filed a motion for class or collective certification.

Between June 2017 and September 2017, Fisher filed several letter motions with the magistrate judge regarding ongoing discovery disputes.  On August 17, 2017, LLG deposed Dominguez Mercado in Orlando, Florida.  On August 21, 2017, Fisher filed a letter motion seeking a conference to discuss an anticipated motion for sanctions against defendants for failure to comply with discovery obligations.  According to Fisher's letter, Dominguez Mercado

5

prematurely ended the deposition after three hours despite agreeing to a seven-hour deposition.  The letter motion asked the district court to compel her to attend a second deposition.  Following a September 5, 2017 conference, a magistrate judge ordered a resumption of the deposition and also assessed the costs associated with the second deposition to the deponent.  On October 13, 2017, LLG resumed Dominguez Mercado's deposition in Florida.  Between September and October 2017, several additional discovery letter motions were filed before the district court.

After months of discovery, on October 25, 2017, the parties participated in a settlement conference before the district court and agreed to a settlement in principle.  The district court ordered the parties to submit a final, executed settlement agreement as well as a "*Cheeks* fairness submission."  App'x at 12; *see also Cheeks*, 796 F.3d at 199.

Accordingly, on January 30, 2018, LLG filed a letter discussing the factors enumerated in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), and submitting the executed settlement agreement as well as certain documentation of LLG's time records and expenses.  The settlement agreement required defendants to pay $25,000 "inclusive of all costs and fees,

including but not limited to attorney's fees," in checks made out to LLG in six installments. App'x at 23. The settlement agreement was silent as to how the payment was to be divided between Fisher and LLG. The letter, however, clarified that LLG would receive $23,000 of the settlement for fees and costs and Fisher would receive the remaining $2,000. The letter also represented that LLG's lodestar was "more than $50,000." App'x at 20. Of the $23,000 to be paid to LLG, $5,140.39 was attributable to costs.

On July 27, 2018, the district court issued an order approving the total settlement sum of $25,000, but modifying the settlement by increasing the amount to be paid to Fisher and reducing the fees and costs to be paid to LLG. First, the district court increased the amount allocated to Fisher from $2,000 to $15,055, or 60.22% of the settlement amount. In doing so, the district court found that Fisher was entitled to $585 in unpaid overtime compensation, $585 in liquidated damages, $5,000 for wage notice violations under the NYLL, and $5,000 for wage statement violations under the NYLL, for a total of $11,170.[3]

---

[3]     Unpaid overtime compensation was calculated by multiplying the number of weeks Fisher worked over 40 hours (13) by the overtime hours each week (9), and then multiplying that total (117) by half of Fisher's regular hourly salary or $5/hour for a total of $585. Moreover, an employer who willfully violates the FLSA "shall be liable" for unpaid minimum and overtime wages in "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The same amount of liquidated damages is available

7

Although this was apparently Fisher's maximum possible recovery, the district

court awarded Fisher an additional $3,885, as explained below.

Second, the district court concluded that LLG's requested costs of

$5,140 for "filing fee, service fees, court reporting fees, and travel expenses" were

not supported by sufficient documentation, reasoning that LLG "has submitted

documentation supporting no more than $1,695 in costs."  App'x at 75.  The

district court awarded costs in that amount only and stated that it would allocate

the difference to Fisher, but the district court, we assume inadvertently,

calculated the cost-differential as $3,885 rather than $3,445, and increased Fisher's

award by that amount instead.

Finally, the district court reviewed the factors outlined in *Goldberger*

*v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), and found that the proposed

---

under the NYLL.  *See* NYLL § 198(1-a).  A plaintiff cannot recover "duplicative liquidated damages for the same course of conduct," and thus a plaintiff cannot recover liquidated damages under both the FLSA and NYLL.  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam).

In addition, an employee who does not receive a wage notice within ten business days of his first day of employment may recover $50 for each workday that the violation continues, up to a maximum of $5,000.  NYLL § 198(1-b).  New York law also requires employers to provide the employee with a wage statement containing certain information including the hours being compensated, the wages paid, and any deductions.  *See* NYLL § 195(3).  An employee may recover $250 per day for each wage statement violation, up to a maximum of $5,000.  *See* NYLL §§ 195(1)(a), 198(1-d).

attorneys' fees of $17,860 was "unreasonable and excessive" and reduced the fees to $8,250, equivalent to 33% of the total settlement.  App'x at 75; *see also* App'x at 75-78.  The district court reduced the attorneys' fees after holding that "[a]s a matter of policy, 33% of the total settlement amount -- or less -- is generally the *maximum* fee percentage which is typical and approved in FLSA cases."  App'x at 78 (emphasis in original).  Accordingly, the district court approved the proposed settlement amount of $25,000 as fair under *Cheeks*, but significantly altered the distribution of the settlement funds by reducing the fees and costs by $9,610 and $3,445, respectively, and reallocating those amounts to Fisher.[4]

       This appeal followed.

---

[4]     The parties had agreed to file a stipulation of dismissal with prejudice after the district court approved the settlement.  Although the district court never entered a final order of dismissal, *see* Fed. R. Civ. P. 58(a), it is clear the parties and the district court intended this to be a stipulated dismissal with prejudice.  *Cf. Vona v. Cty. of Niagara*, 119 F.3d 201, 206 (2d Cir. 1997) (considering a judgment final where it was "clear that the court so intended it"); *United States ex rel. Polansky v. Pfizer, Inc.*, 762 F.3d 160, 163 (2d Cir. 2014) ("if the district court only overlooked a ministerial dut[y], any omission is not fatal to finality and consequent appealability" (alteration in original, internal quotation marks omitted)).

## DISCUSSION

### I.    Applicable Law

#### A.    FLSA Settlements

This Court has held that parties cannot privately settle FLSA claims

with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure

41 absent the approval of the district court or the Department of Labor.  *See*

*Cheeks*, 796 F.3d at 200.[5]  As a result, district courts in this Circuit routinely

review FLSA settlements for fairness before approving any stipulated dismissal.

District courts typically evaluate the fairness of a settlement agreement by

considering the factors outlined in *Wolinsky*, which include, among others:

> (1) the plaintiff's range of possible recovery; (2) the
> extent to which the settlement will enable the parties to
> avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness
> of the litigation risks faced by the parties; (4) whether
> the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the
> possibility of fraud or collusion.

---

[5]      Another panel of this Court has recently held that *Cheeks* does not extend to offers of judgment entered under Federal Rule of Civil Procedure 68(a).  *See Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 411 (2d Cir. 2019) (declining to extend *Cheeks's* judicial approval requirement to Rule 68(a) context).  The instant case does not involve an offer of judgment.

900 F. Supp. 2d at 335-36 (internal quotation marks omitted); *see also Mei Xing Yu*, 944 F.3d at 413 (referring to the *Wolinksy* factors examined as part of a district court's fairness review under *Cheeks*).

In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs. *See Cheeks*, 796 F.3d at 206 (referring to a fees provision within a FLSA settlement agreement); 29 U.S.C. § 216(b) ("The Court . . . *shall,* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)); *see, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-cv-6126 (NGG), 2014 WL 6621081, at *2 (E.D.N.Y. Nov. 21, 2014) ("When an FLSA settlement includes an allotment of attorney's fees, the court must also evaluate the reasonableness of the fees.").

**B.     *Fees and Costs***

Under the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); NYLL § 663(1); *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)). An award of costs "normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-

11

paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *see also Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2012 WL 3878144, at *5 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (affirming costs awarded, including out-of-town travel, meals, photocopying, and other expenses).

The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.").

Attorneys' fees and costs in FLSA actions generally arise in three contexts: (1) fee applications following a ruling in favor of plaintiff, *see, e.g.*, *Choudry v. Durrani*, No. 14-cv-4562 (SIL), 2016 WL 6651319, at *8 (E.D.N.Y. Nov. 10, 2016) (prevailing plaintiff granted leave to file an application for attorneys' fees and costs after successful bench trial); (2) fee applications following a settlement where the settlement agreement reserves the questions of fees and

costs for the court to decide, *see, e.g.*, *Boutros v. JTC Painting & Decorating Corp.*, No. 12-cv-7576 (PAE), 2014 WL 3925281, at *1 (S.D.N.Y. Aug. 8, 2014) (reviewing fee application resulting from parties' disagreement over fees paid to plaintiff's counsel in FLSA settlement); and (3) settlements incorporating attorneys' fees and costs into the settlement amount, *see, e.g.*, *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181-82 (S.D.N.Y. 2015) (reviewing FLSA settlement incorporating counsel's fees as part of the total settlement amount).  This case involves the third scenario.

### C.   *Standard of Review*

"We generally review a district court's approval of a settlement agreement for abuse of discretion."  *In re Sept. 11 Prop. Damage Litig.*, 650 F.3d 145, 151 (2d Cir. 2011).  We review a district court's factual conclusions under the "clearly erroneous" standard, and its legal conclusions *de novo*.  *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

### II.   *Application*

We discuss the district court's order first with respect to costs and second with respect to fees.

### A.    *Costs*

We first consider whether the district court committed an abuse of discretion in reducing counsel's costs from $5,140 to $1,695.  LLG argues that the district court committed a factual error by failing to properly calculate the costs submitted to the court as documented in the accompanying receipts and invoices.  We agree, as it appears that the district court overlooked certain documentation and consequently failed to properly calculate the costs as detailed by the supporting receipts.[6]

LLG's expenses included court reporting and service of process fees, filing fees, hotels and transportation (including two trips to Florida for depositions), and working meals.  These expenses appear to be reasonable, incidental, and necessary to the representation of Fisher in this action.  Moreover, these expenses were documented -- at least to the extent discussed below -- in the

---

[6]      On appeal, LLG represents that the receipts and invoices submitted in the appendix were also presented to the district court as part of its *Cheeks* submission.  *See* Appellant's Br. at 22-23.  This Court was unable to locate any such receipts in the district court's electronic docket because the filed document states that Exhibit C (which includes receipts) is "Redacted on ECF," *see* Dist. Ct. Docket No. 78, and the receipts were otherwise unavailable from the Clerk's Office.  For purposes of this appeal, we accept LLG's representation that these receipts were presented to the district court.

14

receipts and invoices submitted by counsel and would appear to be adequate to support at least most of the requested costs.  *See* App'x at 31-71.

While district courts, in evaluating fee requests, "need not, and indeed should not, become green-eyeshade accountants," on this record, we conclude that the district court erred by failing to properly calculate the costs. *See Fox v. Vice*, 563 U.S. 826, 838 (2011).  After reviewing the receipts in the appendix, we conclude that the district court's finding that the receipts support "no more than $1,695" is clearly erroneous.  App'x at 75.  As one example, the costs of the Florida deposition transcripts -- for which receipts were submitted -- by themselves amount to $2,549.62, thereby already exceeding the figure found by the district court.  *See* App'x at 62-63.  By our calculation, the submitted receipts add up to $4,733.60 in costs.  *See* App'x at 45-71 (receipts and invoices).[7]

Accordingly, we conclude, in light of the receipts included in the record on appeal, that the district court abused its discretion in reducing costs to $1,695.  We remand for the district court to reconsider the amount of costs.

---

[7]     Because the district court did not explain how it arrived at $1,695 in costs, this Court is unable to determine the district court's rationale with respect to the calculation of costs.  *Cf. Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) ("[W]hen the court concludes that certain hours are not deserving of compensation, it must ordinarily state its reasons for excluding those hours 'as specifically as possible' in order to permit meaningful appellate review.").

### B.  *Attorneys' Fees*

Next, we consider the district court's reduction of LLG's attorneys' fees.  The district court found that the requested attorneys' fees of $17,860 was "unreasonable and excessive" and reduced the fees to $8,250, equivalent to 33% of the total settlement amount of $25,000.  *See* App'x at 75-78.  The district court reduced the attorneys' fees after holding that "[a]s a matter of policy, 33% of the total settlement amount -- or less -- is generally the *maximum* fee percentage which is typical and approved in FLSA cases."  App'x at 78 (emphasis in original).  The reduction of $9,610 in attorneys' fees was allocated to Fisher.

We conclude that the district court abused its discretion in two respects:  First, the district court erred as a matter of law in concluding that the "maximum fee percentage" that counsel may be awarded in an FLSA suit is generally limited to 33% of the total settlement amount.  *See* App'x at 78.  Indeed, we have "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."  *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (discussing attorneys' fees in connection with a claim brought under 42 U.S.C. § 1983).  Second, the district court abused its discretion in rewriting the parties'

16

settlement agreement, and it erred in evaluating the fees portion of the

settlement agreement as a separate fee application rather than as part of a

complete settlement agreement.  Accordingly, we vacate the district court's order

and remand for further proceedings.

      **i.**     ***The district court erred in presuming a 33% limit on
attorneys' fees in FLSA settlements and enforcing a
proportionality standard.***

The district court reduced the fees based, in part, on the perceived

disproportionality of the fee to Fisher's recovery, using proportionality as an

outcome determinative factor in evaluating the reasonableness of LLG's fees.  In

fact, district courts in FLSA actions in this Circuit routinely apply a

proportionality limit on attorneys' fees in FLSA actions.[8]

---

[8]    *See, e.g., Heiloo v. Fruitco Corp.*, No. 18-cv-1917 (JPO), 2019 WL 5485205, at *4
(S.D.N.Y. Oct. 25, 2019) (flagging attorneys' fees of 40% of settlement as potential issue
and denying approval of settlement agreement); *Aguirre v. Torino Pizza, Inc.*, No. 18-cv-
2004 (KMK), 2019 WL 126059, at *4 (S.D.N.Y. Jan. 8, 2019) ("Courts routinely award
attorneys in FLSA settlements one-third of the total recovery in fees."); *Cohetero v. Stone
& Tile, Inc.*, No. 16-cv-4420 (KAM), 2018 WL 565717, at *7 (E.D.N.Y. Jan. 25, 2018)
(attorneys' fees representing 33.3% of the settlement in single plaintiff FLSA action was
reasonable); *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) (fee
representing 31% of settlement fund in FLSA class action was reasonable); *Run Guo
Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-cv-6667 (PAE), 2015 WL 5122530, at *4
(S.D.N.Y. Aug. 31, 2015) (reducing award from 37% of net settlement amount to 33%, in
two person FLSA action, because "fee in excess of one-third of the settlement amount
disserves the FLSA's important interest in fairly compensating injured plaintiffs");
*Thornhill v. CVS Pharmacy, Inc.*, No. 13-cv-5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y.
Mar. 20, 2014) (collecting cases where district courts reduce attorneys' fees greater than

Neither the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees.  With respect to the statutory text, FLSA simply provides for a "reasonable attorney's fee to be paid by the defendant."  29 U.S.C. § 216(b).  Nothing in this clause or the surrounding text supports the conclusion that a "reasonable attorney's fee" must be a "proportional" fee.  *See, e.g.*, *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 294 (3d Cir. 2007) (explaining that "[n]othing in the text of [ERISA's similar fee-shifting provision] suggests that to be 'reasonable,' fees must be proportional"); *cf.* 42 U.S.C. § 1997e(d)(l)(B)(i) (expressly providing that a prisoner will not be awarded fees in an action brought pursuant to 42 U.S.C. § 1988 unless "the amount of the fee is proportionately related to the court ordered relief for the violation").

A proportionality rule would also be inconsistent with the remedial goals of the FLSA, which we have deemed a "uniquely protective statute." *Cheeks*, 796 F.3d at 207.  In 1938, Congress enacted the FLSA to guarantee workers "[a] fair day's pay for a fair day's work" and to guard against "the evil of 'overwork' as well as 'underpay.'"  *Overnight Motor Transp. Co. v. Missel*, 316 U.S.

---

33% of the settlement).

572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President

Roosevelt)).  By implementing a percentage cap on attorneys' fees in FLSA

actions, district courts impede Congress's goals by discouraging plaintiffs'

attorneys from taking on "run of the mill" FLSA cases where the potential

damages are low and the risk of protracted litigation high.  Fee awards in wage

and hour cases should "encourage members of the bar to provide legal services

to those whose wage claims might otherwise be too small to justify the retention

of able, legal counsel." *Sand v. Greenberg*, No. 08-cv-7840 (PAC), 2010 WL 69359,

at *3 (S.D.N.Y. Jan. 7, 2010).  In advancing Congress's goals under the FLSA to

ensure a "fair day's pay for a fair day's work," the law cannot be read to impose a

proportional limitation based on the perceived complexities of the litigation.

*Missel*, 316 U.S. at 578.

       While in some cases the proportion of fees may be relevant in

considering the reasonableness of an award (for example, the multi-million

dollar securities class action involving a common fund, often cited by the district

courts in evaluating fee requests, *see Goldberger,* 209 F.3d at 50-51), there is no

explicit limit on attorneys' fees in FLSA actions and district courts should not, in

effect and practice, implement such a limit.  *See City of Riverside v. Rivera*, 477 U.S.

561, 578 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.").  Even if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award.

In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement.  FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries.  Plaintiffs in wage and hour disputes, like Fisher (a professional chaperone, earning $10 an hour), earn modest salaries.  *See Cheeks*, 796 F.3d at 207 (noting that FLSA cases tend to settle for less than $20,000 in total recovery and fees, and that employees will often "settle for between $500 and $2,000" in unpaid compensation (internal quotation marks and citation omitted)).  If plaintiffs' attorneys in these so-called "run of the mill" FLSA actions are limited to a proportional fee of their client's recovery (here, a maximum of $11,170), no rational attorney would take on these cases unless she were doing so essentially pro bono.  Without fee-shifting provisions providing compensation for counsel, employees like Fisher would be left with little legal recourse.

20

This case is a prime example of a "run of the mill" FLSA action involving modest damages.  The district court justified its reduction of attorneys' fees after reviewing the "magnitude and complexities" of this FLSA action, which it deemed a "relatively simple and uncomplicated overtime dispute."  App'x at 77-78.[9]  Few plaintiffs would be willing to pay $22,000 in attorneys' fees and costs to recover $11,000 in overtime wages and statutory penalties, and "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery."  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis in original) (holding that district court impermissibly limited attorney's fees to one-third of $612.50 recovery on Family Medical Leave Act claim).  Indeed, this Court has recognized that:

> The public interest in private civil rights enforcement is not limited to those cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations.  Congress meant reasonable attorney's fees to be available to the

---

[9]    We are uncertain whether we, in the first instance, would characterize this action as "simple and uncomplicated."  While it is true that the uncompensated overtime was small ($585), the litigation itself involved months of discovery resulting in several letter motions and an out-of-state deposition that was abruptly ended due to improper conduct by the deponent and then later resumed.  *See* App'x at 7-10 (Dist. Ct. Docket Nos. 34, 39, 46, 55); *see Kassim*, 415 F.3d at 252 (where counsel is required to take action to address other side's dilatory conduct, "the hours required to litigate even a simple matter can expand enormously").

Case 18-2594   Document 66   02/04/2020   2768846   Page 22 of 29

> private attorneys general who enforce the law, not only
> to those whose cases make new law.

*Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (citation omitted).

In the context of analogous civil rights legislation, we have long held -- and we reiterate today -- that a fee may not be reduced merely because the fee would be "disproportionate to the financial interest at stake in the litigation." *Kassim*, 415 F.3d at 252; *accord Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 160 (2d Cir. 1992) (rejecting notion that "fees be proportional to the amount of damages recovered"); *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 527 (2d Cir. 1991) (holding that lodestar was not subject to reduction to achieve proportionality with damages award). The Supreme Court, this Court, and district courts in this Circuit have long recognized the significance of attorneys' fees in civil rights cases and have not hesitated to award or approve disproportionate fees to counsel. *See, e.g.*, *City of Riverside*, 477 U.S. at 564-67 (upholding award of $245,456.25 in fees, even though plaintiffs recovered only $33,350); *Barbour v. City of White Plains*, 700 F.3d 631, 634-35 (2d Cir. 2012) (per curiam) (affirming award of $290,997.94 in fees and costs, even though plaintiffs recovered only $30,000); *Hui Luo v. L & S Acupuncture, P.C.*, 649 F. App'x 1, 3 (2d Cir. 2016) (summary order) (affirming award of $64,038 in fees and $4,830.67 in costs, even though

plaintiff recovered only $4,130.75); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 9 (S.D.N.Y. 2015) (awarding $48,366.50 in attorneys' fees and $1,150.60 in costs, even though plaintiff recovered only $7,500); *Grochowski v. Ajet Const. Corp.*, No. 97-cv-6269 (NRB), 2002 WL 465272, at *1 (S.D.N.Y. Mar. 27, 2002) (awarding $97,207.50 in attorneys' fees, even though plaintiffs recovered only $26,000); *Samborski v. Linear Abatement Corp.*, No. 96-cv-1405 (DC), 1999 WL 739543, at *4 (S.D.N.Y. Sept. 22, 1999) (awarding $110,000 in attorneys' fees and $7,437.59 in costs, even though plaintiffs recovered only $50,000).

Accordingly, in light of the text and purpose of the FLSA, as well as longstanding case law interpreting other similar fee-shifting statutes in the civil rights context, we conclude that the district court erred in imposing a proportionality limit on LLG's recoverable attorneys' fees.

### ii. *The district court abused its discretion by rewriting the proposed settlement agreement.*

The district court approved the settlement amount as fair under *Cheeks*, but then proceeded to modify the allocation of the settlement funds as between Fisher and LLG.[10]  In doing so, the district court abused its discretion by

---

[10]    Other district courts have also approved settlements while imposing significant modifications.  *See, e.g.*, *Beckert v. Ronirubinov*, No. 15-cv-1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015); *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-cv-112 (PAE),

rewriting the proposed settlement agreement.[11]  If a district court concludes

pursuant to *Cheeks* that a proposed settlement is unreasonable in whole or in

part, the court cannot simply rewrite the agreement -- it must reject the

agreement or give the parties an opportunity to revise it.  In its discretion, a

district court may suggest -- as it does in an order of additur or remittitur -- an

amount of attorneys' fees and costs it would find reasonable under the

circumstances.  But it exceeds its authority when it simply rewrites the

agreement by imposing terms on the parties to which they did not agree.  *See*

*Evans v. Jeff D.*, 475 U.S. 717, 726 (1986) (holding, in Fed. R. Civ. P. 23 context, that

"the power to approve or reject a settlement negotiated by the parties before trial

does not authorize the court to require the parties to accept a settlement to which

they have not agreed").

        A district court may not simply rewrite the terms of a settlement

agreement because a "settlement agreement is a contract that is interpreted

---

2015 WL 7736551, at *3 (S.D.N.Y. Nov. 30, 2015); *Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*, No. 13-cv-6071 (KBF), 2014 WL 2115143, at *1, *3-4 (S.D.N.Y. May 20, 2014).

[11]    While the settlement agreement itself was silent as to the division of settlement funds between Fisher and LLG, as noted *supra* at 6-7, LLG's detailed letter submitted on behalf of Fisher with the defendants' agreement clarified the allocation of settlement funds.  Accordingly, we read the settlement agreement and the letter together.

according to general principles of contract law." *Omega, S.A.*, 432 F.3d at 443;

*accord In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 121 (2d Cir. 2014)

(same); *Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 514 F.2d

767, 772 (2d Cir. 1975) (court is "powerless to rewrite the provisions of the

settlement agreement"). If the "terms of a contract are clear, courts must take care

not to alter or go beyond the express terms of the agreement, or to impose

obligations on the parties that are not mandated by the unambiguous terms of

the agreement itself." *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019)

(quoting *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 32 (2d Cir. 2016)). When presented

with a settlement for approval, a district court's options are to (1) accept the

proposed settlement; (2) reject the proposed settlement and delay proceedings to

see if a different settlement can be achieved; or (3) proceed with litigation. *See*

*Evans*, 475 U.S. at 727.

       We recognize that FLSA settlements entered into pursuant to a

stipulated dismissal with prejudice represent a special type of contract because

district courts are required to review these settlements for reasonableness as set

forth in *Cheeks*, 796 F.3d at 199. *Cf. Mei Xing Yu*, 944 F.3d at 411. The obligation

extends to the reasonableness of attorneys' fees and costs. *Cheeks*, 796 F.3d at 206.

We further recognize that FLSA rights cannot be abridged via contract. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). Nonetheless, even though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable. *See Lilly*, 934 F.3d at 236 (holding that district court erred in awarding attorneys' fees "beyond what the parties agreed to" in the contract).

The district court treated the issue of fees and costs as if it was being presented with a fee application separately made after a plaintiff has prevailed through litigation or settlement. In those circumstances, district courts have the discretion to set attorneys' fees as they reasonably see fit. *See, e.g., McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a *fee application*" (internal quotation marks and citation omitted, emphasis added)). Where the issue of fees

and costs is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs, however, the inquiry is different as the settlement is submitted for approval, not adjustment or revision. Accordingly, the district court erred here by evaluating the settlement agreement under the lens of a fee application, and then proceeding to rewrite the agreement.

\* \* \*

On remand, the district court shall evaluate the reasonableness of the requested attorneys' fees and costs without using proportionality as an outcome determinative factor.

While the original proposed split of $23,000 to LLG and $2,000 to Fisher understandably gave the district court pause, the reasonableness of the fees does not turn on any explicit percentage cap. Instead, as noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In considering the reasonableness of LLG's fees on remand, the district court shall take into account that an award of $11,170 would give Fisher complete recovery in this litigation. If Fisher were to be awarded $11,170, LLG would have achieved complete

27

success by obtaining 100% of Fisher's possible overtime wages and statutory damages under the FLSA and NYLL.[12]

Moreover, the district court should also take into account that LLG engaged in the following tasks: drafting and filing a complaint, discovery (including conducting two depositions in Florida), filing several letter motions concerning discovery disputes, participating in court conferences, engaging in settlement negotiations, and drafting and filing an executed settlement agreement along with a *Cheeks* submission.  Given its efforts in litigating this case and its success in negotiating a favorable settlement on Fisher's behalf, LLG is entitled to reasonable compensation, not limited by an artificial rule of proportionality.  If the district court determines that the proposed split of $23,000

---

[12]    We recognize that the settlement here resolves both the FLSA claims and the state law claims, as did the settlement in *Cheeks*.  796 F.3d at 200 (both state and federal claims).  Some district courts have approved "bifurcated settlements," where parties settle the FLSA claims in an agreement that receives judicial review and the non-FLSA state claims separately without judicial review.  *See, e.g.*, *Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018); *Feliz v. Parkoff Operating Corp.*, No. 17-cv-7627 (HBP), 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018).  We do not have such a bifurcated settlement before us and thus we do not decide whether the settlement of state law claims paired with FLSA claims requires judicial approval.  As a practical matter, we recognize that employers are unlikely to settle FLSA claims separately from parallel state law claims in the same action.  Where a settlement dismisses with prejudice both FLSA and state law claims, it seems to us a district court must take into account at least the existence of the state law claims in assessing the reasonableness of the settlement, which turns in part on the total potential recovery.

28

to LLG and $2,000 to Fisher is not reasonable, it shall reject the settlement,

although it may advise the parties what it would find reasonable and give them

an opportunity to reach a new agreement.

## CONCLUSION

For the reasons set forth above, we VACATE the district court's

order and REMAND to the district court for further proceedings consistent with

this Opinion.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

29