**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MICHAEL FISHER, on behalf of himself :
and others similarly situated, :
:
Plaintiff, :
:
-against- :
:
SD PROTECTION INC., et al., :
:
Defendants. :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/7/2020__

17 Civ. 2229 (RMB)

**DECISION & ORDER**

Having reviewed the record herein, including without limitation: **(1)** the decision of the

Court of Appeals, dated February 4, 2020 ("COA Decision"), which vacated the District Court's

Order Approving Modified Settlement, dated July 27, 2018 ("July 27, 2018 Order"), and directed

the Court: **(i)** to "reconsider the amount of [attorneys'] costs;" and **(ii)** to "evaluate the

reasonableness of the requested attorneys' fees and costs without using proportionality as an

outcome determinative factor." (COA Decision at 15, 27);[1] **(2)** the Court's July 27, 2018 Order

which concluded that the total settlement amount of $25,000 was fair and reasonable in light of

the *Noel v. Laidlaw & Company, LTD* factors; that Plaintiff's counsel, Lee Litigation Group,

---

[1] The appeal taken by Plaintiff's counsel, C.K. Lee, was actually pre-mature. At the settlement conference on October 25, 2017, it was agreed that the Court's order approving the settlement would **not** result in dismissal of the case: C.K. Lee: "One of the issues that the parties had discussed earlier was the confession of judgment. I have submitted to the Court that if the Court can delay dismissing this case until payment in full is made, then plaintiffs can proceed to not request a confession of judgment." Court: "That works for me . . . I'm happy to hold the case open until the last payment is made," Oct. 25, 2017 Tr. at 4:13-20, Court: "Counsel proposed if it was okay to hold off on my final dismissal of the case while the installments are paid until they are paid in full, and I said I have no objection to doing that. I think that these appear to be honorable people and they will make the payments." Id. at 5:2-6. Accordingly, the July 27, 2018 Order contains the following provision: "The Court will hold the case open until the last payment is made." July 27, 2018 Order at 8 (citing Oct. 25, 2017 Tr. at 4:19-20).

PLLC ("Lee Litigation Group" or "Plaintiff's counsel") should receive less than the requested $23,000 in fees and costs; and that Plaintiff's award should be higher than $2,000 to account, among other things, for his claims under New York Labor Law ("NYLL"); **(3)** Lee Litigation Group's letter, dated January 30, 2018, which contended that a settlement in the amount of $25,000 (as provided in the Settlement Agreement and Release, dated January 30, 2018) is fair and reasonable; that "Plaintiff's counsel's fees of $23,000 are fair and reasonable;" and that the amount of $2,000 proposed to be awarded to Plaintiff "is a fair result." In the letter, Plaintiff's counsel also acknowledge that they were fully aware that the Court had reservations about the proposed legal fees. (Jan. 30, 2018 Pl. Ltr. at 5)[2]; **(4)** Exhibit B to the January 30, 2018 letter from Lee Litigation Group which is entitled "Calculation for [Plaintiff] Michael Fisher" and which, in fact, calculates Plaintiff's Fair Labor Standards Act of 1938 ("FLSA") damages to be $585, and Plaintiff's NYLL damages to be $10,585. According to Exhibit B, the $10,585 amount consists of $585 as "NY State Liquidated Damage;" plus $5,000 as a "Statutory Penalty for Invalid Wage and Hour Notice;" plus $5,000 as a "Statutory Penalty for Invalid Wage Statement." (See Exhibit B attached hereto at p.28); **(5)** Defendants' counsel's letter, dated March 3, 2020, which states that "Defendants . . . take no position with respect to the next steps, except that they would not agree to pay any more (gross) than has already been agreed to," namely $25,000. Defendants' letter is consistent with the idea that Lee Litigation Group – rather than Defendants – was responsible for the allocation of the settlement fund between Plaintiff and Plaintiff's counsel. (See COA Decision at 7; see also Mar. 3, 2020 Def. Ltr. at 1); **(6)** Lee Litigation Group's letter, dated March 4, 2020, which argues that the Court: (i) "should now, on

---

[2] Plaintiff's counsel also stated: "I surmise that the downward pressure on plaintiff-side legal fees is caused by the growth of FLSA lawsuits, and courts wanting to limit the additional filing of FLSA lawsuits [that] clog up their docket." Jan. 30, 2018 Ltr. at 6.

remand, approve the parties' $25,000 settlement as fair under *Cheeks* (including approval of the requested attorneys' fees and costs of $23,000);" and also (ii) "enter judgment in the amount of $21,000 (representing the outstanding settlement balance), **plus** $1,650 representing time spent by Plaintiff's counsel in connection with enforcement of the settlement, so Plaintiff may begin collection procedures." (Mar. 4, 2020 Pl. Ltr. at 1, 2); **(7)** The cost spreadsheet prepared by the Court's staff in the summer of 2018 at the Court's request which shows that Plaintiff's counsel's receipts supported no more than $1,695 in costs. The spreadsheet is attached hereto as Exhibit C. (See Exhibit C at p.29; see also July 27, 2018 Order at 4); **(8)** the recent teleconference during which the parties and the Court discussed, among other things, the disparity between the receipts submitted to the Court of Appeals on the appeal and the receipts submitted to the District Court in connection with settlement. (See Mar. 17, 2020 Tr.). At the conference, Plaintiff's counsel acknowledged that: "It is possible that there was a human error on our firm's side, perhaps, the paralegal assisting in the mailing of the documents to the Court . . . Perhaps, the district court did **not** receive the full amount of receipts on initial submission." (Id. at 8:25-9:13) (emphasis added); **(9)** the NYLL § 190 et seq., which provides, among other things, that "[i]f any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars;" and that "[i]f any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." (See NYLL §§ 195, 198); **(10)** Plaintiff's complaint, dated March

28, 2017, which was styled as a class and collective action and states that Plaintiff "on behalf of himself and others similarly situated . . . file[d] this Class and Collective Action Complaint against Defendants . . .." (Complaint at 1). Plaintiff sought, among other damages, "statutory penalties . . . pursuant to New York Labor Law." (Id. at 10). Plaintiff's counsel litigated the case as a class and collective action from the filing of the Complaint and right up to and including the settlement conference on October 25, 2017 when Plaintiff's counsel settled the case as if it were a single plaintiff action. (See Oct. 25, 2017 Tr. at 2:4-25, 5:16-23); **(11)** the criticisms by other courts of Plaintiff's counsel's outcomes, rates, and billing practices in FLSA/NYLL cases, including Judge Denise Cote's admonition in *Marcel Mendez, et al v. Pizza on Stone, et al*, 11-CV-6316 (S.D.N.Y. Aug. 9, 2013) as follows: "Mr. Lee, I'm not going to award you $116,000, or anything close to it . . . I think our nation's wage and hour laws and New York State's wage and hour laws are extraordinarily important . . . But litigation has to be conducted in a way that is appropriate to the circumstance [] [a]nd what we have here is a miniscule recovery." Judge Katherine Polk Failla commented in *Galindo v. East County Louth Inc.*, 2017 WL 5195237, at *5 (S.D.N.Y. Nov. 9, 2017) that Lee Litigation Group's "rate is not reasonable, joining a chorus of other courts in this District."[3]; and **(12)** the very real potential for migration ("diversion") of a plaintiff's potential recovery into counsel's fees warned against by other courts, including Judge

---

[3] At least eight other district judges and magistrate judges have reached similar (negative) conclusions about Lee Litigation Group's billing rates, substantiation, and (mis)representations. *See e.g. Trinidad v. Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (Engelmayer, D.J.); *Pacheco v. Chickpea at 14th St. Inc.*, 2019 WL 6683826, at *3 (S.D.N.Y. Dec. 6, 2019) (Furman, D.J.); *Jimenez v. KLB Foods, Inc.*, 2015 WL 3947273, at *2 (S.D.N.Y. June 29, 2015) (Oetken, D.J.); *Flores v. Negril Vill., Inc.*, 2016 WL 8969316, at *2 (S.D.N.Y. Apr. 25, 2016) (Nathan, D.J.); *Agudelo v. E & D LLC*, 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.); *Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*, 2014 WL 2115143, at *3 (S.D.N.Y. May 20, 2014) (Forrest, D.J.); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 27 (S.D.N.Y. 2015) (Dolinger, M.J.); *Kim v. 511 E. 5th St., LLC*, 2016 WL 6833928, at *4 (S.D.N.Y. Nov. 7, 2016) (Francis, M.J.).

Lewis A. Kaplan who remarked in *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) that: "[C]ourts must remain alert to the risk that the filing and settling of FLSA cases has become a volume-based business and that the interest of plaintiffs' counsel in counsel's own compensation will adversely affect the extent of the relief counsel will procure for the clients." Similarly, Judge William H. Pauley III has cautioned in *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. 2015) that in a wage case settlement "the Court's primary function is to make sure that some of the plaintiff's recovery has not been unreasonably diverted to pay his attorney a greater fee than that to which he is entitled,"

**the Court advises the parties as follows:**

- Lee Litigation Group's proposed costs and fees are not reasonable based upon the factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). *Goldberger* is widely applied by district courts in assessing the reasonableness of attorneys' fees in wage cases. *See e.g. Tapia v. Mount Kisco Bagel Co. Inc.*, 2018 WL 4931542, at *3 (S.D.N.Y. Oct. 10, 2018) (Karas, D.J.) (stating that "[i]n the Second Circuit, courts generally draw on the . . . '*Goldberger*' factors when assessing the reasonableness of attorneys' fees" in FLSA settlements); *Sanchez v. IND Glatt, Inc.*, 2018 WL 10468019, at *2 (E.D.N.Y. Jan. 4, 2018) (Kuo, M.J.) ("Although *Goldberger* involved a securities class action settlement, these criteria also apply to requests for attorneys' fees in individual plaintiff FLSA cases").

- The Court recommends that Plaintiff's counsel receive: **(i)** $4,733.60 to cover their costs; and **(ii)** $9,096.40 as reasonable attorneys' fees.

- The Court would approve the $25,000 settlement as "fair and reasonable" under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and the factors set forth in

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) and *Noel v. Laidlaw & Company, LTD*, 16-Civ. 3975, slip op. at 3. (See July 27, 2018 Order at 2); and

- The Court would approve a Plaintiff's award in the amount of $11,170 reflecting, among other things, the Complaint's NYLL claims.

The Court's reasoning is set forth in the memorandum attached hereto as Exhibit A (and incorporated herein by reference). See COA Decision at 29 (the Court "may advise the parties what it would find reasonable and give them an opportunity to reach a new agreement").

**Order**

Plaintiff and Defendant shall submit any comments they may have in writing and suggest a timetable for next steps in this case on or before April 15, 2020 (noon).

Plaintiff's counsel's application, dated March 4, 2020, which requests that the Court "grant Plaintiff's [May 23, 2019] Motion to Enforce the Settlement" and "enter judgment in the amount of $21,000 (representing the outstanding settlement balance), plus $1,650 representing time spent by Plaintiff's counsel in connection with enforcement of the settlement, so Plaintiff may begin collection procedures," is denied as moot as there is currently no approved settlement.

The Court is fully prepared to conduct a trial on the merits of the case in the event that a settlement cannot be reached by the parties.

Dated: New York, New York
      April 7, 2020

_____
**RICHARD M. BERMAN**
**U.S.D.J.**

## Exhibit A

## Memorandum

The purpose of this memorandum is to advise the parties what the Court "would find reasonable" in approving a settlement. See COA Decision at 29. The Court believes that a settlement in the total amount of $25,000 is fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) and *Noel v. Laidlaw & Company, LTD*, 16-Civ. 3975, slip op. at 3. The Court also believes that Lee Litigation Group should receive a total of $13,830 in costs and fees, i.e. $4,733.60 for costs plus $9,096.40 in attorneys' fees. And, the Court believes Plaintiff Michael Fisher should receive $585 in back wages under the FLSA; $585 in liquidated damages under the FLSA; $5,000 in statutory damages for wage notice violations under the NYLL; and $5,000 in statutory damages for wage statement violations under the NYLL. Plaintiff's total award would be $11,170.

## Lee Litigation Group's Costs and Attorneys' Fees

The FLSA and NYLL adopt a "fee-shifting" approach. See  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fees to be paid by the defendant, and the costs of the action."); NYLL § 198(1-a) ("In any action . . . in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees"). Fee-shifting uncouples attorneys' fees from the plaintiff's award. It most often comes into play after a trial or judgment on the merits or following a separate fee application by counsel after the plaintiff's damages have been determined. *See Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 265 (S.D.N.Y. 2013) (Sweet, D.J.) (quoting *Buckhannon Bd. and Home Care v. W. Va. Dept. of Health and Human Resources*,

532 U.S. 598, 605 (2001)); *Andrews v. City of New York*, 118 F. Supp. 3d 630, 634-35 (S.D.N.Y. 2015) ("Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees"); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987) ("a fundamental aim of such [fee-shifting] statutes is to make it possible for those who cannot pay a lawyer for his time and effort to obtain competent counsel, this by providing lawyers with reasonable fees to be paid by the losing defendants"); see also infra discussion at pp. 25-26.

An important objective of the court in reviewing wage case settlements -- particularly where, as here, the settlement includes both the plaintiff's award and his counsel's fees in one lump sum -- is "to make sure that some of the plaintiff's recovery has not been unreasonably diverted to pay his attorney a greater fee than that to which he is entitled." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. 2015) (Pauley, D.J.) (citations and quotations omitted). As noted in the accompanying Decision & Order, Judge Kaplan described one of the Court's roles in *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) as follows: "[C]ourts must remain alert to the risk that the filing and settling of FLSA cases has become a volume-based business and that the interest of plaintiffs' counsel in counsel's own compensation will adversely affect the extent of the relief counsel will procure for the clients." (internal citations and quotations omitted). And, Judge Cote has stated: "[T]he question for me is what would be appropriate in an award of attorneys' fees here to provide essentially adequate incentives for plaintiff's lawyers who are doing this important work, but also to not promote activity which ends up not awarding any employees moneys that they actually deserve under the law . . .." *Marcel Mendez, et al v. Pizza on Stone, et al*, 11-CV-6316 (S.D.N.Y. Aug. 9, 2013).

**Lee Litigation Group's Costs**

The Court of Appeals found that the District Court "abused its discretion in reducing [Lee Litigation Group's] costs to $1,695," COA Decision at 15, and it directed the District Court to "reconsider the amount of costs." Id. The Court of Appeals based its own decision as to costs upon the receipts included in the record on appeal and it "assumed" these were the same receipts which had been submitted to this court. Id. at 14. They were not.

And, the District Court did not "reduce" Plaintiff's counsel's costs. Rather, it awarded Plaintiff's counsel costs of $1,695 which was the exact amount that had been documented, i.e. for which receipts had been submitted. See Exhibit C hereto; see also July 27, 2018 Order at 4. Plaintiff's counsel argued incorrectly in the Court of Appeals that "the district court committed a factual error by failing to properly calculate the costs submitted to the court as documented in the accompanying receipts and invoices." COA Decision at 14.

To be clear, receipts submitted to the Court of Appeals which accounted for the bulk of Lee Litigation Group's costs had not been submitted to the District Court. And, respectfully, it was not the case that the District Court "reduced" Plaintiff's counsel's costs or "that the district court overlooked certain documentation and consequently failed to properly calculate the costs as detailed by the supporting receipts." COA Decision at 14.

At the March 17, 2020 teleconference with the parties, this cost issue was raised as follows: Court: "[The Court's] records do not show any support for costs in excess of the amount that we actually awarded [$1,695] . . . We have no record of any submission in support of a cost greater than that amount . . . But what I did find in our record[s] . . . was a [staff spreadsheet and memorandum] . . . that [state] unequivocally there were no receipts beyond the amount [$1,695] that we approved for costs." Mar. 17, 2020 Tr. at 9:15-24, 11:17-23. Plaintiff's counsel's

response to the Court on behalf of Lee Litigation Group was as follows: <u>Anne Seelig:</u> "So, the only thing I can't figure out is if we submitted the same thing to the [district] Court but the Court calculated a different number of costs. It is possible that there was a human error on our firm's side, perhaps, the paralegal assisting in the mailing of the documents to the Court . . . that's just the part that I can't figure out because we've only docketed the redacted exhibits [which did not include any receipts] . . . **Perhaps, the district court did not receive the full amount of receipts on initial submission but I don't think that's something I am going to be able to definitively resolve**." <u>Id.</u> at 8:25-9:13 (emphasis added).

The Court properly determined that Plaintiff's counsel was entitled to $1,695 in costs based upon the following:

1. The Court's file includes the spreadsheet and memorandum documenting the substantiated attorney costs. This material was prepared at the Court's request in anticipation of the Court's review of the settlement agreement. <u>See</u> <u>Exhibit C</u> hereto. The spreadsheet was prepared by court staff and shows that Plaintiff's counsel submitted receipts totaling $1,695 and no more. <u>See</u> <u>Exhibit C</u>; <u>see also</u> <u>July 27, 2018 Order</u> at 4. The staff memorandum states unequivocally that "Plaintiff's counsel submitted incomplete receipts that do not account for the total expenses requested."

2. Lee Litigation Group has acknowledged that they filed on ECF a blank submission marked "redacted" on January 30, 2018 which did not include detailed cost support (receipts). <u>See Mar. 17, 2020 Tr.</u> at 8:17-23. In fact, the submission did not initially include any receipts, in contravention of the Court's individual rules which provided that "all . . . documents . . . [should] appear on the public docket" and that "[n]o . . . documents may be filed under seal without prior authorization from the Court."

Thereafter, Plaintiff's counsel delivered (mailed) cost receipts to chambers which supported expenditures totaling $1,695. This was done outside of the ECF system. Ms. Seelig's comments at the March 17, 2020 conference are again instructive: <u>Ms. Seelig</u>: "And as we usually do when we file applications that have an exhibit that may have costs or receipts that could have personal information say of the attorney that booked a flight to do depositions in Florida or a credit card number, normally we file something on the docket saying Exhibit X is redacted and its physical copy is mailed to chambers. So, that's what happened here." <u>Mar. 17, 2020 Tr.</u> at 8:17-23.[1]

By avoiding the public docket, counsel brought about unnecessary disagreement. "The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." <u>COA Decision</u> at 12 (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)). "[I]t is [] the requesting party's burden to support its application, and this means that the requested costs must be substantiated . . . A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation." <u>See</u> <u>Exhibit C</u>; <u>July 27, 2018 Order</u> at 4 citing *Lee v. Santiago*, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013).

3.  Plaintiff's counsel made no effort to advise the district court that, in their opinion, the Court had "overlooked" any cost receipts or "failed to properly calculate the costs as detailed by the supporting receipts." <u>See</u> <u>COA Decision</u> at 14. Plaintiff's counsel filed no application for reconsideration which would have alerted the Court to any problem and

---

[1] Not filing and submitting actual receipts via ECF appears to be Plaintiff's counsel's regular practice. *See e.g. Amador v. El Paso Taqueria 1643 Corp., et al.*, No. 15-CV-8878; *Maldonado v. El Aguila Lex, LLC, et al.*, No. 15-CV-9306.

would have been the logical and appropriate step if the Court had erred in its mathematical calculations. This step would have been especially easy to take here because the Court had earlier granted Plaintiff's counsel's request not to dismiss the case until all installments of the settlement had been paid. See Decision & Order p.1 n.1. The following colloquy at the March 17, 2020 teleconference is on point: Court: "Just as a curiosity . . . did it ever cross your mind to, when I issued the [July 27, 2018] order . . . to say, judge, there's a mathematical error here. Can you reconsider because in fact our costs are four thousand or five thousand dollars, not one thousand plus and here is the proof of it." Ms. Seelig: "We didn't.  But I believe there's a disconnect because we had believed that the Court had all of our receipts and had deliberately cut them to that amount . . ." Court: "Did I say that anywhere?" Ms. Seelig: "No." Mar. 17, 2020 Tr. at 10:15-11:3.

The Court, on March 17, 2020, advised Plaintiff's counsel that it would reconsider the cost issue. It also advised that it would give Plaintiff's counsel "the benefit of the doubt" with respect to those additional costs that were substantiated in the Court of Appeals. Mar. 17, 2020 Tr. at 10:10-12. Accordingly, the Court recommends that Plaintiff's counsel receive $4,733.60 in costs. This is the same amount that the Court of Appeals calculated based upon the receipts Plaintiff's counsel submitted on appeal. COA Decision at 15.[2]

**Attorneys' Fees**

The Court of Appeals directed the Court to "[re]evaluate the reasonableness of the requested attorneys' fees and costs without using proportionality as an outcome determinative

---

[2] This amount is actually $406.79 less than the amount Plaintiff's counsel proposed to the Court of Appeals as Plaintiff's counsel's costs. COA Decision at 15.

factor." <u>COA Decision</u> at 27; <u>Id.</u> at 19-20 ("[I]n some cases the proportion of fees may be relevant . . . [but] [e]ven if helpful . . . the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award.").

The measure of court approved attorneys' fees is, of course, "reasonableness." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 336 (Furman, D.J.) ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."); *see also Camacho v. Ess-A-Bagel, Inc.*, 2014 WL 6985633, at *1 (S.D.N.Y. Dec. 11, 2014) (Kaplan, D.J.) ("District courts  must evaluate whether a proposed FLSA settlement is 'fair and reasonable' and whether any concomitant award of attorneys' fees is reasonable."). In FLSA settlements, the reasonableness assessment requires the court "to ensure that 'the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (Gorenstein, M.J.) (citing *Wolinsky*, 900 F. Supp. at 336).

### ***Goldberger* Analysis**

In assessing the reasonableness of Plaintiff's counsel's attorneys' fees, it is useful and appropriate to apply *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). For one thing, notwithstanding that *Goldberger* was a federal securities litigation, many courts appropriately have relied upon the *Goldberger* framework (factors) to determine whether attorneys' fees were reasonable in FLSA/NYLL wage cases. *See e.g. Tapia v. Mount Kisco Bagel Co. Inc*., 2018 WL 4931542, at *3 (S.D.N.Y. Oct. 10, 2018) (Karas, D.J.) ("In the Second Circuit, courts generally draw on the . . . 'Goldberger' factors when assessing the reasonableness of attorneys' fees" in FLSA settlements); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135,

at *1 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.) ("In evaluating an attorney's fee request [in FLSA/NYLL settlements], a court must consider [the *Goldberger* factors]"); *Sanchez v. IND Glatt, Inc.*, 2018 WL 10468019, at *2 (E.D.N.Y. Jan. 4, 2018) (Kuo, M.J.) ("Although *Goldberger* involved a securities class action settlement, these criteria also apply to requests for attorneys' fees in individual plaintiff FLSA cases").

Second, this case was commenced and litigated as a class (and collective) action. See Complaint at 1 ("Plaintiff . . . on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants"); Id. at 10 ("Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests this Court to grant [] relief"). On May 11, 2017, Plaintiff filed a letter application for a pre-motion conference to discuss Plaintiff's anticipated motion for conditional collective certification under the FLSA. And, "[b]y his anticipated motion for conditional collective certification, Plaintiff seeks to represent a class of employees similarly situated." See May 11, 2017 Pl. Ltr. at 1. On August 31, 2017, Plaintiff filed a letter application for a pre-motion conference to discuss Plaintiff's anticipated motion for class certification for Plaintiff's NYLL claims, stating that "Plaintiff seeks to certify a class on behalf of all chaperones employed by Defendants in New York" and that "Plaintiff satisfies all requirements under Rule 23." Aug. 31, 2017 Pl. Ltr. at 1-2.

Third, while the Court has considered Lee Litigation Group's lodestar of $51,372, it is unclear just how persuasive that figure can be where Plaintiff's counsel has already discounted that amount by agreeing to $23,000 as the "fair and reasonable" attorneys' fees and costs. When determining reasonableness, the district court will typically "bear in mind all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorneys' fees in

setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

## <u>Minimal Success Achieved</u>

The Court of Appeals states that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." <u>COA Decision</u> at 27 (citations and quotations omitted). This Court reviews "degree of success" as part of its multi-factor *Goldberger* analysis and suggests that "degree of success" may be considered under one or more of the six *Goldberger* factors (including perhaps *Goldberger* factors one, two, four, five, and six).

"Both 'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). "[T]his comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." *Id.* (internal quotations omitted). A "district court's assessment of the 'degree of success' achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims." *Id.*

By the "level of success" metric, Lee Litigation Group's proposed fees are clearly excessive. For one thing, Plaintiff's counsel failed to certify a class or procure any class relief, notwithstanding their pursuit of a collective and class action from "beginning to end." And, Plaintiff's proposed award of $2,000 ignores the prospect of Plaintiff's recovery under the NYLL, even though the NYLL claims are clearly set forth in the Complaint and accounted for in Exhibit B. <u>See</u> <u>Complaint</u> at 10-11; <u>see</u> <u>also</u> <u>Exhibit B</u>.

In the *Barfield* case, Judge Jed Rakoff reduced the plaintiff's counsel's attorneys' fees by half (50%) because of counsel's failure to certify a collective action. *Barfield*, 537 F.3d at 152. The Court of Appeals affirmed, reasoning that "plaintiff's primary aim in this litigation, as reflected in her complaint and in the first four months of litigation . . . was to certify a collective action." *Id.* "It is against this background of anticipated relief for thousands that plaintiff's recovery of $1,744.50 in compensatory and liquidated damages for herself appears to reflect only a small degree of success." *Id.* The Court of Appeals shared the district court's concern that "not reducing the fee award in these circumstances would pose two risks: (a) decreasing the incentive for plaintiffs' lawyers vigorously to litigate collective action certification, and (b) encouraging plaintiffs' lawyers to file collective action-based claims even where there is little basis for doing so." *Id.*

As in *Barfield*, the Plaintiff in this case filed collective and/or class actions on behalf of Plaintiff and others similarly situated: "Plaintiff brings claims for relief as a collective action pursuant to the FLSA . . . [and] under [] Federal Rule of Civil Procedure Rule 23 for . . . Defendants' . . . violat[ions of] the New York Labor Law"; "the claims for relief are properly brought under and maintained as an opt-in collective action pursuant to [the FLSA];" "Plaintiff's claims are typical of those claims that could be alleged by any member of the [NYLL] Class;" "Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation." Complaint at 1, 3-5, 8; see also supra at p.14. Plaintiff's counsel's estimate of the number of class members ranged from "more than forty" to five hundred. Compare Complaint at 4 to Oct. 25, 2017 Tr. at 2:25.

Plaintiff's pursuit of collective/class certification occurred over the seven months of the case, as reflected in Plaintiff's counsel's two pre-motion letters. See supra at p.14. Between the

filing of the Complaint and settlement, Plaintiff's counsel also engaged in pre-certification class discovery. See Oct. 13, 2017 Order at 2 (affirming Magistrate Judge Fox's September 5, 2017 Order granting Plaintiff's pre-certification discovery).

In fact, Plaintiff's counsel continued to discuss collective and class certification up until the settlement conference on October 25, 2017. See Oct. 25, 2017 Tr. at 2:14-21. Plaintiff's counsel advised the Court at the conference that the parties had engaged in settlement discussions but were still negotiating class relief: Court: "How much progress has been made in this case toward either resolution or preparation for trial?" Mr. Lee: "Your Honor, there have been some discussions about settlement, but the impasse is whether it should be for an individual basis or class basis." Oct. 25, 2017 Tr. at 2:2-6. At the settlement conference, Plaintiff's counsel resolved the impasse with defense counsel, without explanation as far as the Court is aware, and settled for a non-class award to Plaintiff Fisher of $2,000 in satisfaction of all his individual claims. Id. at 5:16-23; see also Jan. 30, 2018 Pl. Ltr. at 2; Mar. 17, 2020 Tr. at 6:8-9.

**No NYLL Recovery**

The proposed settlement eschewed any recovery for Plaintiff under the NYLL. In doing so, it appears to be at odds with Plaintiff's counsel's calculation of damages, set forth in Exhibit B. According to that exhibit, Plaintiff was at least eligible for $11,170 in damages. At the recent March 17, 2020 conference, Ms. Seelig, on behalf of Lee Litigation Group, acknowledged that there was no provision for Plaintiff's NYLL claims in the proposed settlement. Mar. 17, 2020 Tr. at 7:19-21 (Court: "But [do] you think it's OK just to wipe out any recovery attributable to New York Labor Law in the settlement?" Ms. Seelig: "We do.").

The Court of Appeals concluded that "complete recovery" for the Plaintiff would be $11,170. COA Decision at 27. "Where a settlement dismisses with prejudice both FLSA and

state law claims, it seems to us a district court must take into account at least the existence of the state law claims in assessing the reasonableness of the settlement, which turns in part on the total potential recovery." See COA Decision at 28 n.12.

In precluding any recovery on a class basis or as to Plaintiff's individual NYLL claims, Lee Litigation Group was, at best, only minimally successful.

### *Goldberger* Factors

The **first** *Goldberger* factor is the time and labor expended by counsel. "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). "Courts have 'ample discretion' in assessing the 'amount of work that was necessary to achieve the results in a particular case.'" *Najera v. 144 Ninth Gotham Pizza, Inc.*, 2017 WL 728703, at *1 (S.D.N.Y. Feb. 24, 2017) (Cote, D.J.) (quoting *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992)).

### Excessive Hourly Rates

"To determine an attorney's reasonable hourly rate, courts engage in 'a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel, which may include taking 'judicial notice of the rates awarded in prior cases,' and relying on 'the court's own familiarity with the rates prevailing in the district.'" *Id.* Here, the Court takes judicial notice of the fact that the hourly rates charged by Plaintiff's counsel (C.K. Lee and Anne Seelig) have very often been found to be excessive and have been regularly reduced by a "chorus" of other courts in this district. See July 27, 2018 Order at 5, citing *Galindo v. East County Louth, Inc.*, 2017 WL 5195237, at *5 (S.D.N.Y. Nov. 9, 2017)

(Failla. D.J.) (stating that "[t]he lead attorney on the matter, C.K. Lee, claims entitlement to an hourly rate of $550. The Court finds that this rate is not reasonable, joining a chorus of other courts in this District"; and reducing Mr. Lee's hourly rate from $550 to $375 and Ms. Seelig's rate from $350 to $325); *Kim v. 511 E. 5th St., LLC*, 2016 WL 6833928, at *4 (S.D.N.Y. Nov. 7, 2016) (Francis, M.J.) (reducing Plaintiff's counsel's fees and stating that "a rate of $250.00 per hour for Mr. Lee and a rate of $200.00 per hour for Ms. Seelig is reasonable."); *Flores v. Negril Village, Inc.*, 2016 WL 8969316, at *2 (S.D.N.Y. Apr. 25, 2016) (Nathan, D.J.) ("[T]he rates at which Plaintiff's counsel C.K. Lee seeks to bill for his firm are 'higher than the norm in this district,' and have previously been reduced by several courts in this district."); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 27 (S.D.N.Y. 2015) (Dolinger, M.J.) ("We stated that 'a $600–per–hour rate is beyond that which is typical for FLSA litigators in this district . . . and believe the same to be true of $550.00–per–hour rates . . . Moreover, a number of fairly recent decisions in this district have specifically reduced Mr. Lee's requested hourly rate of $550.00 per hour for purposes of lodestar."); *Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*, 2014 WL 2115143, at *3 (S.D.N.Y. May 20, 2014) (Forrest, D.J.) ("[P]laintiffs' counsel's hourly rates are unacceptably high" and "exceed those ordinarily provided for in this district for similar such matters"); *Agudelo v. E & D LLC*, 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013) (Baer D.J.) ("At $550 per hour, his quoted rates are disproportionately large compared to the rates charged by comparable employment law attorneys."); *see also Pacheco v. Chickpea at 14th St. Inc.*, 2019 WL 6683826, at *3 (S.D.N.Y. Dec. 6, 2019) (Furman, D.J.) (describing Lee Litigation Group's hourly rates as "excessive"); *Jimenez v. KLB Foods, Inc.*, 2015 WL 3947273, at *2 (S.D.N.Y. June 29, 2015) (Oetken, D.J.) (describing Lee Litigation Group's hourly rates as "high for employment cases in this district" and reducing C.K. Lee's rate from $550 to $350, and Anne

Seelig's rate from $350 to $250); *Trinidad v. Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (Engelmayer, D.J.) ("Mr. Lee's reported billing rate of $550 per hour is higher than the norm, which, for wage-and-hour cases in this District, appears to be between $300 and $400 per hour.").

Plaintiff's counsel's hourly rates are unreasonably high at $550 per hour for lead attorney C.K. Lee and $450 per hour for Anne Seelig.

## Misrepresentations of Other Courts' Actions

Plaintiff's counsel inaccurately represented to this Court in their *Cheeks* letter, dated January 30, 2018, that courts in this district regularly "approve" their hourly rates. The opposite is true. Plaintiff's counsel has been reprimanded by courts in this district for mis-citing other cases as support for the proposition that Mr. Lee and Ms. Seelig's hourly rates have often been approved. *Galindo*, 2017 WL 5195237, at *5 (Failla, D.J.) ("[The Court] fault[s] [Plaintiff's counsel] for suggesting that courts in this District have specifically approved this rate—a position that is at best an inexcusable oversight and at worst an equally inexcusable misrepresentation. Mr. Lee has been repeatedly warned by judges in this District not to misstate the decisions of other courts concerning his fee awards, particularly awards that are in fact based on a percentage-of-the-recovery basis"); *Kim*, 2016 WL 6833928, at *2 (Francis, M.J.) ("The plaintiffs' memorandum states that rates of $550.00 per hour for Mr. Lee and $350.00 per hour for Ms. Seelig 'have been approved within the Second Circuit.' This broad statement is, at best, a bold mischaracterization of case law . . . Lee Litigation has previously been cautioned for misconstruing prior cases . . . Lee Litigation has not adhered to its duty of candor to the Court in its submissions; violation of the duty of candor can lead to discipline"); *Gonzalez*, 112 F. Supp. 3d at 24 (Dolinger, M.J.) ("Mr. Lee has submitted declarations to judge after judge" presenting

"a self-referential list of cases . . . that stands for the purportedly unqualified proposition that 'Class Counsel has been approved for an hourly rate of $550 in other class action settlements' . . . counsel has built himself a house of cards upon which he constructs one fee application after another. As currently framed, this list of decisions—when presented in tandem with the characterization that it unqualifiedly reflects judicial approvals of counsel's hourly rate—is, at best, a woefully inartful articulation of the state of this case law and, at worst, a blatantly self-interested misrepresentation to the court. These cases simply do not stand for the blanket appropriateness of a $550.00–per–hour rate for Mr. Lee and counsel would be well-advised to stop passing them off as such.").

Plaintiff's counsel also recorded excessive hours in this case. Four attorneys and one paralegal recorded 164.9 hours. The case took less than seven months, starting with the filing of Plaintiff's twelve-page Complaint on March 28, 2017 and concluding in a settlement reached at a conference on October 25, 2017. The case included no class action motions, no dispositive motions, and it entailed relatively uncomplicated discovery. See May 15, 2017 Case Management Plan. Forty percent (40%) of the hours were recorded by partner C.K. Lee (at $550 per hour) and senior counsel Anne Seelig (at $450 per hour), amounting to sixty four percent (64%) of Lee Litigation Group's lodestar of $51,372. In the Court's view, Lee Litigation Group recorded more (and more expensive) time than is expected or necessary -- as it has often done in other FLSA cases. *See e.g. Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 593 (S.D.N.Y. 2015) (Fox, M.J.) (finding Lee Litigation Group's hours "excessive, redundant and unnecessary" in light of the fact that the action was a "simple and straightforward action for violations of FLSA and NYLL").

**Vague Time Records**

"All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1154. Plaintiff's counsel's time sheet entries are too often imprecise, vague and uninformative. Some of Plaintiff's counsel's entries state, for example, that counsel had a "call" or "meeting" or "internal discussion" with another person, without explaining what the call, meeting, or discussion was about. See Pl. App'x to App. Br. at A32 to A43. In other instances, they state only that counsel "prepared" for an event without explaining what the preparation entailed.

On the basis of imprecise time sheets, other courts have reduced Lee Litigation Group's fees. *Trinidad*, 2014 WL 4670870, at *10 (Engelmayer, D.J.) ("[M]any of Mr. Lee's time entries are thinly worded and non-specific . . . The Court's judgment is that, to account for these deficiencies, it is fair to discount the aggregate hours Mr. Lee worked by 25%."); *see also Sevilla v. Nekasa, Inc.*, 2017 WL 1185572, at *7 (S.D.N.Y. Mar. 30, 2017) (Peck M.J.) ("case law also makes clear that the Court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did") (collecting cases); *Pastor v. Alice Cleaners, Inc.*, 2017 WL 5625556, at *9 (S.D.N.Y. Nov. 21, 2017) (Cott, M.J.) (reducing fees in part because time entries stating "Trial Preparation" were "so vague as to merit reduction").

In sum, the first *Goldberger* factor weighs overwhelmingly in favor of reducing substantially Lee Litigation Group's attorneys' fees. Based upon this first factor alone, reducing Plaintiff's counsel's attorneys' fees to $9,096.40 is fully justified, having considered Plaintiff's counsel's lodestar and their requested fees. *See e.g. Kim*, 2016 WL 6833928, at *4 (reducing Lee Litigation Group's attorneys' fees by 66%); *see also Barfield v. New York City Health & Hosps.*

*Corp.*, 2006 WL 2356152, at *3 (S.D.N.Y. Aug. 11, 2006) (Rakoff, D.J.), *aff'd*, 537 F.3d 132 (2d Cir. 2008) (reducing plaintiff's counsel's attorneys' fees by 85%).

The **second and third** *Goldberger* factors are the "magnitude and complexities of the litigation" and the "risk" of the litigation. This case was a relatively uncomplicated overtime dispute brought as a class action but settled not long after it commenced in favor of a single plaintiff, with no significant motion practice and little or no extensive discovery. People may disagree as to the meaning of the term "run of the mill," but it is indisputable that this case lasted only seven months, did not involve class or dispositive motions, and included only one deposition, albeit of a recalcitrant witness. *See Sines v. Service Corp. Int'l*, 2006 WL 1148725, at *3 (S.D.N.Y. May 1, 2006) (where "the claims . . . involved no issues of exceptional difficulty . . . [i]t is, at bottom, a suit for unpaid overtime"); *see also Alvarez v. Sterling Portfolio Inv., LP*, 2017 WL 8790990, at *3 (E.D.N.Y. Dec. 13, 2017) (Scanlon, M.J.) ("As to the 'complexity and magnitude of the matter,' this case – as is true of many FLSA cases – was simple"); *Encalada v. Baybridge Enterprises Ltd.*, 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014) (Cogan, D.J.), *aff'd*, 612 F. App'x 54 (2d Cir. 2015) ("[t]here are some, relatively few, FLSA cases that raise complex issues ... [h]owever, the majority of cases ... could hardly be simpler"), *aff'd*, 612 F. App'x 54 (2d Cir. 2015). After assessing these two *Goldberger* factors, the amount of fees that Plaintiff's counsel seeks should be reduced.

The **fourth** *Goldberger* factor is the "quality of representation." The Court does not suggest that Plaintiff's counsel is inexperienced in FLSA matters. Indeed, Lee Litigation Group's practice appears to be heavily devoted to FLSA/NYLL cases. In any event, experience alone does not warrant "an increased fee where [as here] counsel simply displays the general level of skill expected." See July 27, 2018 Order at 6 citing *Beane v. Bank of N.Y. Mellon*, 2009 WL

874046, at *8 (S.D.N.Y. Mar. 31, 2009). And, the widespread condemnation of Lee Litigation Group's billing practices detailed above must be taken into account in the *Goldberger* assessment. Id. at 5-6; see also supra at 19-23. This factor also weighs against granting Plaintiff's counsel's requested fees.

The **fifth** *Goldberger* factor is the "requested fee in relation to the settlement." This factor sounds in proportionality. *See Sanchez*, 2018 WL 10468019, at *5 ("Plaintiffs argue that the Court may not consider the 'proportionality' of the attorneys' fees and the amount to be recovered by the Plaintiffs. However, one of the 'traditional criteria' discussed in *Goldberger* explicitly links 'the requested fee in relation to the settlement' . . . Such a comparison is appropriate 'to ensure that the percentage awarded does not constitute a windfall [to plaintiff's counsel]'").

The Court recognizes that the decision of the Court of Appeals, at the very least, downplays proportionality. "While in some cases the proportion of fees may be relevant in considering the reasonableness of an award . . . there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." COA Decision at 19. This Court makes clear that it has not treated proportionality as "outcome determinative." Proportionality is but one of many *Goldberger* factors which leads to the conclusion that Lee Litigation Group's proposed fees are too high. At the same time, where, as here, the proposed Plaintiff's settlement award is 18% of Plaintiff's counsel's own estimate (calculation) of Plaintiff's damages, reflects no class recovery or any recovery under the NYLL, and is 8% of the total settlement amount, the Court should absolutely have the discretion to consider "proportionality" (and "diversion") in making its assessment. See Exhibit B. "Congress's intent was decidedly not . . . to create an incentive for counsel to prioritize their

interests above those of their clients and to submit exaggerated or overblown requests for fees." *Dajbabic v. Rick's Cafe*, 995 F. Supp. 2d 210, 213 (E.D.N.Y. 2014) (Gershon, D.J).

The principal purpose of the FLSA and NYLL is to compensate the underpaid worker, i.e. to guarantee a "fair day's pay for [] fair day's work" and to guard against "the evil of . . . 'underpay.'" See COA Decision at 18 citing *Overnight Motor Transp. Co.*, 316 U.S. 572, 578 (1942); *see also Gold v. Am. Med. Alert Corp.*, 2015 WL 4887525, at *4 (S.D.N.Y. Aug. 17, 2015) (the purpose of the NYLL (Article 6) is to "strengthen and clarify the rights of employees to the payment of wages"); *Trinidad*, 2014 WL 4670870, at *12 ("FLSA and NYLL are remedial statutes designed to protect employees from unfair labor practices"). Under both the FLSA and NYLL, a plaintiff can pursue unpaid overtime compensation, and liquidated damages for such underpayment. 29 U.S.C. § 216(b); NYLL § 198(1-a). Separately, under the NYLL, the plaintiff can also seek statutory damages up to $5,000 for wage notice violations and up to $5,000 for wage statement violations. See COA Decision at 7-8 n.3 (citing NYLL §§ 195(1)(a), (3); 198(1-b), (1-d)). The calculation of Plaintiff's damages totaling $11,170 prepared by Lee Litigation Group is nearly impossible to reconcile with an actual proposed award to Plaintiff of $2,000. See Exhibit B.

**Fee-Shifting & Proportionality**

The FLSA's and NYLL's fee-shifting provisions effectively uncouple a plaintiff's award from plaintiff's counsel's legal fee application. When this happens, proportionality may very well be less of a factor because counsel's award is unlikely to detract from or diminish Plaintiff's award. This is clear in each of the cases cited at pages 22-23 of the Court of Appeals Decision. In each instance, the plaintiff's award was determined first, and the plaintiff's counsel's fees were awarded against the defendant after a separate fee application had been made and reviewed by

the court. See COA Decision at 22-23 citing *Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) (summary judgment on the merits; jury trial on damages); *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 154 (2d Cir. 1992) (jury trial); *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 523 (2d Cir. 1991) (bench trial); *City of Riverside v. Rivera*, 477 U.S. 561, 564 (1986) (jury trial); *Hui Luo v. L & S Acupuncture, P.C.*, 649 F. App'x 1 (2d Cir. 2016) (bench trial); *Grochowski v. Ajet Const. Corp.*, 2002 WL 465272, at *1 (S.D.N.Y. Mar. 27, 2002) (Buchwald, D.J.) (jury trial); *Barbour v. City of White Plains*, 700 F.3d 631 (2d Cir. 2012) (plaintiffs accepted Rule 68 offer of settlement and plaintiff's counsel moved for attorneys' fees and costs under 42 U.S.C. § 1988); *Gonzalez*, 112 F. Supp. 3d at 9 (after parties settled FLSA plaintiff's claims for $7,500, plaintiff's counsel submitted a separate fee application); *Samborski v. Linear Abatement Corp.*, 1999 WL 739543, at *1 (S.D.N.Y. Sept. 22, 1999) (plaintiffs settled for $50,000 and plaintiff's counsel filed a separate application for attorneys' fees and costs).

But where, as in this case, the plaintiff's award and counsel's fees are part and parcel of a lump sum settlement, proportionality is more of a concern in determining "reasonableness." *See Sanchez*, 2018 WL 10468019, at *5 ("It is clear that the amount of damages which a plaintiff recovers after a trial plays no role in the reasonableness of attorneys' fees incurred in fully litigating a case. By contrast, review under *Cheeks* always involves a settlement agreement and is inherently constrained by the proposed settlement amount. In such a context, proportionality is an appropriate consideration.").

The **sixth** *Goldberger* factor is "public policy considerations." The Court of Appeals stated that "FLSA cases . . . frequently result in limited recoveries" and "[i]f plaintiffs' lawyers in these so called 'run-of-the-mill' FLSA actions are limited to a proportion of their client's recovery, no rational attorney would take on these cases." COA Decision at 20. This may well be

a concern, although the experience of at least some judges is that the FLSA bar is alive and well and that the public policy of promoting wage cases is being achieved. *See e.g. Sakiko Fujiwara*, 58 F. Supp. 3d 424, 429 (S.D.N.Y. 2014) ("Recent years have witnessed an explosion in FLSA litigation."). At the end of the day, the employee must be treated fairly and as noted by Judge Cote: "[T]he question for me is what would be appropriate in an award of attorneys' fees here to provide essentially adequate incentives for plaintiff's lawyers who are doing this important work, but also to not promote activity which ends up not awarding any employees moneys that they actually deserve under the law." *Marcel Mendez, et al v. Pizza on Stone, et al*, 11-CV-6316 (S.D.N.Y. Aug. 9, 2013).

\*\*\*

**FOR SETTLEMENT PURPOSES ONLY**
(SD Protection)

**Calculation for Michael Fisher**

**Period 1**

**Assumptions:**     Period Worked            February 1, 2015 to July 31, 2015
                    Number of weeks worked   26 weeks
                    Hours worked/week        35 to 49 hours, interchangeable
                    Salary                   $10.00/hour

**Overtime Wage**
Regular Rate of $10.00

Unpaid OT    = 0.5 x (Regular Rate) x (Hours over 40) x (Weeks Working over 40 hours)
             = 0.5 x $10.00 x 9 x 13
             = $585.00

**Period 1 Total**    = $585.00

**Back wage** = $585.00

NY State Liquidated Damage                          = $585.00
Statutory Penalty for Invalid Wage and Hour Notice  = $5,000.00
Statutory Penalty for Invalid Wage Statement        = $5,000.00

**Total = $10,585.00**

Legal fees and expenses to be determined.

**Exhibit C**

| | |
|---|---:|
| **Deposition of Dominguez on 10/13/17** | **720.06** |
| **Filing Fee on 3/28/17** | **400** |
| Dinner and Breakfast 8/17/17 | 50.88 |
| **Uber to airport 8/16/17** | **40.85** |
| Delivery 8/17/17, 1:35 p.m. | 21.15 |
| Taxi | Unknown |
| **Lyft 10/13/17** | **20.11** |
| **Second Lyft 10/13/17** | **19.53** |
| **Spirit flight from Newark to Orlando 10/12/17** | **166.19** |
| **AA flight from Orlando to NY** | **139.31** |
| **Metro Card** | **20.95** |
| **Service** | **96** |
| | |
| | 1695.03 |